# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| IN RE CONTEMPT SANCTIONS AGAINST JOHN KILGALLON, Chief of Staff for the United States Marshals Service, DANIEL C. MOSTELLER, United States Marshal for the District of South Dakota, and STEPHEN HOUGHTALING, Chief Deputy United States Marshal for the District of South Dakota, individually and in their official capacities.<br><br>Defendants. | Case No. 1:21-CR-10023 |

## STATEMENT OF INTEREST

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517[1] in support of defendants' motion to dismiss the charges that they engaged in criminal contempt of court under 18 U.S.C. § 401. The United States has an interest in this matter because, as discussed below, 18 U.S.C. § 401 must be read in harmony with other federal statutes, including 28 U.S.C. § 566, which vests the U.S. Marshals Service with responsibility to ensure the safety and security of court proceedings.

---

[1] That statute provides: "The Solicitor General, or any other officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517. Pursuant to its statutory authority, the United States has filed its statement of interest on the filing deadline date for other briefs referenced in the Court's July 16, 2021 scheduling order, *see* ECF No. 39, including amicus briefs that require leave of court.

1

**INTRODUCTION**

These proceedings arise out of an unprecedented rift between a federal judge and the U.S. Marshals Service, which is the bureau of the Department of Justice that, by statute, is vested with responsibility to provide for the security of the federal courts. *See* 28 U.S.C. §§ 561(a), 566(a); *see also id.* § 566(i) (providing that the U.S. Marshals Service "retains final authority regarding security requirements for the judicial branch of the Federal Government").

To ensure the safety of court proceedings, U.S. Marshals Service policy requires that at least one deputy U.S. marshal be present whenever a prisoner is in the courtroom, regardless of the presence of court security officers. *See* ECF No. 11-4 (Policy Directive 10.2(D)(4)(a)). The same policy is reflected in the Marshals Service's court security officer contract with the Eighth Circuit, which prohibits court security officers from moving or monitoring Marshals Service prisoners. *See* ECF No. 11-6 (Sections C.3.1.1.1, C.14.2.26).

The uncontested record shows that the conduct of the Marshals Service that is at issue here was consistent with that policy. During criminal proceedings on May 10, Judge Kornmann ordered the deputy U.S. marshal in attendance to leave the courtroom. *See* ECF 11-3 at Tr. 3:12-4:16. Because the Marshals Service could not ensure the safety of courtroom proceedings without a deputy U.S. Marshal present, the three prisoners with in-person hearings scheduled for that afternoon were temporarily removed from the courthouse, *see* ECF 1-4 at Tr. 4:1-18, and their proceedings were conducted by videoconference later the same day, *see* ECF No. 1-4 at Tr. 14:9-24.

The Judge issued a show cause order on May 19, 2021, concerning "why [the defendants] should not be found to be in civil contempt of this Court and, if so found, to be punished accordingly with monetary sanctions and injunctions." ECF No. 1 at 10. The Judge characterized the removal of those three prisoners by the Marshals Service as "kidnaping criminal defendants who had been ordered to appear before me." *Id.* at 8. He declared that he "frankly" does "not care whether a deputy is present or not" and has "great confidence in the five full-time court security officers in Aberdeen." *Id.* at 6. The United States and the individual defendants responded to the show cause order and explained why the alleged conduct did not amount to civil contempt. ECF No. 11. In a June 11, 2021 order, the Judge agreed that the alleged conduct "cannot be civil contempt." ECF No. 14 at 1. Nevertheless, the Judge stated that "[t]he only solution is to charge the defendants with criminal contempt," and held a hearing on June 14 to provide notice under Federal Rule of Civil Procedure 42 and explain the procedures that would be followed. *Id.* In the June 15 order that is before this Court, the Judge memorialized the statements made during the June 14 hearing and charged that the prisoners' removal constituted criminal contempt of court—specifically, obstruction of justice and conspiracy to obstruct justice under 18 U.S.C. § 401—by three executive branch officials: the Chief of Staff for the U.S. Marshals Service; the U.S. Marshal for South Dakota; and the Chief Deputy U.S. Marshal for South Dakota. ECF No. 21.

The criminal contempt charges should be dismissed. The removal of the prisoners by the Marshals Service was pursuant to agency policy that is designed to ensure the safety and security of the federal courts. It was not misconduct and it was manifestly not a criminal offense. The criminal contempt charges are an unwarranted intrusion into the law enforcement responsibilities of the executive branch, and an unwarranted critique of three federal officials who collectively have more than 75 years of public service.

## BACKGROUND

### A. The U.S. Marshals Service Policy Regarding Prisoners

The U.S. Marshals Service is "a bureau within the Department of Justice under the authority and direction of the Attorney General." 28 U.S.C. § 561(a). Each judicial district is assigned a U.S. Marshal, who is presidentially appointed and Senate confirmed. *See id.* § 561(c). The U.S. Marshals are supervised by the Director of the Marshals Service, who is also presidentially appointed and Senate confirmed. *See id.* § 561(c), (e), (g).

A "primary role and mission" of the Marshals Service is to provide security for the federal courts. 28 U.S.C. § 566(a). Although the Director of the Marshals Service consults regularly with the Judicial Conference regarding the security requirements for the judicial branch, the Marshals Service "retains final authority regarding security requirements for the judicial branch of the Federal Government." *Id.* § 566(i).

The policy directive of the Marshals Service that is at issue here pertains to prisoners. It specifies that "[a]ny in-custody person, who must be physically

4

present in the courtroom during any proceeding, will be escorted by at least two operational personnel." ECF No. 11-4 (Policy Directive 10.2(D)(4). Although district security officers and detention enforcement officers may be used as operational personnel for prisoner handling, "a minimum of one [deputy U.S. Marshal (DUSM)] must be present to provide judicial and courtroom security." *Id.* Court security officers (CSOs) "are not authorized to serve as a part of a prisoner production team." *Id.*

The same policy is reflected in the Marshals Service's court security officer contract with the Eighth Circuit, which prohibits court security officers from moving or monitoring Marshals Service prisoners. *See, e.g.,* ECF 11-6 (Section C.3.1.1.1) (providing that "CSOs shall not monitor cellblocks or handle and escort prisoners"). Indeed, the contract states that it is a "dereliction of duty" for a court security officer to "move or monitor USMS prisoners." *Id.* (Section C.14.2.26).

### B. Factual Background And Prior Proceedings

**1.** On May 10, 2021, during criminal proceedings, Judge Kornmann ordered the deputy U.S. Marshal in attendance to "leave the courtroom immediately" because she declined to state whether she was fully vaccinated against COVID-19. ECF No. 11-3 at Tr. 3:17-18. The Judge admonished her: "Don't come in this courtroom again unless you're fully vaccinated." *Id.* at Tr. 3:25-4:1.

The Judge later made clear that the criminal contempt charges at issue here have "nothing to do with requiring anyone to be fully vaccinated." ECF No.

33 at 1. Instead, the charges are based on the Marshals Service's temporary removal of the three prisoners who were scheduled for hearings the afternoon of May 10 after the Marshals Service determined that it could not guarantee the safety of the courtroom in the absence of their physical presence. *Id.* at 2. Shortly after their removal, the Deputy Chief U.S. Marshal explained to the Judge that Marshals Service policy "requires deputy marshals in the courtroom" and that, "with the exclusion of our deputy marshal from the courtroom," the Marshals Service could not "safely provide the level of security" needed for court proceedings. ECF No. 1-4 Tr. 4:3-9. The proceedings for those three prisoners were conducted later the same day by video from a conference room at the courthouse with minimal disruption to the Court's hearing schedule. ECF No. 11-7.

Despite the Chief Deputy U.S. Marshal's explanation that the prisoners had been temporarily removed pursuant to agency policy to ensure the safety of court proceedings, the Judge issued an order on June 15 that charged three officials involved in that decision with criminal contempt: the Chief of Staff for the U.S. Marshals Service; the U.S. Marshal for South Dakota; and the Chief Deputy U.S. Marshal for South Dakota. The Judge characterized the Marshals Service's removal of those prisoners as "outrageous illegal activity," ECF No. 33 at 2, that, he alleged, constituted obstruction of justice and conspiracy to obstruct justice under 18 U.S.C. § 401, *see* ECF No. 21 at 1.

In addition, although the hearings scheduled for May 11 went forward as scheduled with minimal delay, the Judge charged the same officials with

6

conspiracy to obstruct justice with respect to those prisoners as well, *see* ECF No. 21 at 1-2—apparently because the Chief Deputy U.S. Marshal had been unable to assure the Judge on May 10 that the Marshals Service would have staff available to produce those prisoners without the deputy U.S. marshal whom the Judge had barred from the courtroom, *see* ECF No. 1-4 at Tr. 9:2-18.

**2.** The June 15 order directed the U.S. Attorney's Office for the District of South Dakota to notify the Judge by June 18 whether it would prosecute the criminal contempt charges. *See* ECF No. 21 at 2. The order indicated that the Judge would appoint a private attorney to prosecute the charges if the U.S. Attorney's Office declined to do so. *Id.*

Because the U.S. Attorney's Office for the District of South Dakota was recused, the matter was referred to the Public Integrity Section of the Department of Justice. *See* ECF No. 29. The Public Integrity Section notified the Judge that it declined to accept the matter for prosecution. *Id.*

**3.** On June 29, before he recused himself, the Judge disclosed that he had on an unspecified prior date appointed the private attorney James E. McMahon to prosecute the criminal contempt charges. *See* ECF No. 33 at 1. The public docket does not include an order appointing Mr. McMahon; however, the June 29 order stated that Mr. McMahon had attempted

7

unsuccessfully to negotiate a resolution of the criminal contempt charges and was unwilling for personal reasons to proceed to trial on the charges. *Id.*[2]

The June 29 order indicated that the Judge was allowing Mr. McMahon to withdraw and was appointing a second private attorney, Mr. Thomas G. Fritz, as successor special prosecutor. *See* ECF No. 33 at 1-2.[3] In the same order, the Judge recused himself from further proceedings on the contempt charges. *Id.* at 3.

### ARGUMENT

"The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed." *Mahers v. Hedgepeth*, 32 F.3d 1273, 1275 (8th Cir. 1994). "Criminal contempt is a sui generis proceeding for the protection of the integrity of the Court," which has the power and authority to order" the proceedings "dismissed." *United States v. Barnett*, 346 F.2d 99, 100 (5th Cir. 1965).

The criminal contempt charges at issue here should be dismissed. The uncontested record discussed above shows that the action on which the charges are based—the temporary removal of three prisoners from the

---

[2] The terms of Mr. McMahon's negotiations were not publicly disclosed, but the Judge had stated previously that "the matter would go away" if the three Marshals Service officials "would admit to their wrongdoing, fully apologize, assure the Court that this will never happen again, and voluntarily pay $5,000 each to the Attorneys Admission Fund in the District of South Dakota." ECF No. 20 at Tr. 15; ECF No. 14 at 2.

[3] The June 29 order directed that Mr. McMahon and Mr. Fritz be compensated at a rate of $300 per hour plus expenses, and that their compensation, as well as that of their staffs, should be paid by the Administrative Office of the U.S. Courts. *See* ECF No. 33 at 2-3.

courthouse by the U.S. Marshals Service—was pursuant to Marshals Service policy that is designed to ensure the safety and security of the federal courts. That action was not misconduct by Marshals Service officials, and it plainly was not a criminal offense.

Contrary to the Judge's premise, the Marshals Service did not "kidnap" the prisoners, ECF No. 20 at Tr. 22, who were at all times in the legal custody of the Marshals Service. Nor did Marshals Service officials "stand in the door" and "block defendants from being brought into court for hearings." *Id* at 17. It was the Judge himself who ordered the only deputy U.S. Marshal in attendance to "leave the courtroom immediately." ECF No. 11-3 at Tr. 3:17-18. As a consequence of that order, the Marshals Service was unable to ensure that at least one deputy U.S. Marshal would be physically present in the courtroom as required by Marshals Service policy.

We note that, though the Judge stated that he does "not care whether a deputy is present or not" and has "great confidence in the five full-time court security officers in Aberdeen." ECF No. 1 at 6, the Marshals are bound to follow Marshals Service policy. Congress has vested the Marshals Service with "final authority regarding security requirements for the judicial branch of the Federal Government." 28 U.S.C. § 556(i). Thus, the Court's confidence in court security is legally immaterial to the Marshals Service's determination in this case. Pursuant to Marshals Service policy and contract, the duties of court security officers include responsibilities such as operating screening equipment at courthouse entrances; monitoring CCTV and other security equipment;

providing escort services for judges, court personnel, jurors, and other designated individuals; and directing pedestrian and vehicle traffic. *See* ECF No. 11-6 (Section C.3.1.1.1). However, court security officers are not permitted to "handle and escort prisoners," *id.* (Sections C.3.1.1.1), and, indeed, it is a "dereliction of duty" for a court security officer to do so, *id.* (Section C.14.2.26).

The criminal contempt statute must be read in harmony with other federal statutes, including Section 566. Thus, the Marshals Service's implementation of the authority that Congress vested in the agency under Section 566 is not properly treated as a violation of Section 401. More generally, any such policy disagreements are properly resolved through dialogue between the executive branch and the judicial branch—not through the weapon of criminal contempt. *See id.* § 566(a) (directing the Director of the Marshals Service to consult regularly with the Judicial Conference regarding the security requirements for the judicial branch, but specifying that the Marshals Service retains final authority regarding security requirements).

## CONCLUSION

For the foregoing reasons, the criminal contempt charges should be dismissed.

Dated: August 20, 2021

                        Respectfully submitted,

                        BRIAN M. BOYNTON
                        Acting Assistant Attorney General
                        Civil Division

JENNIFER D. RICKETTS
Director, Federal Programs Branch

CHRISTOPHER HALL
Assistant Branch Directors

*/s/ Joshua E. Gardner*
JOSHUA E. GARDNER
Special Counsel
United States Department of Justice
Federal Programs Branch
1100 L St. NW, Room 11502
Washington, DC 20530
Tel.:  (202) 305-7583
Fax:  (202) 616-8470
Email: joshua.e.gardner@usdoj.gov

Attorneys for the United States


**CERTIFICATE OF COMPLAINCE WITH TYPE-VOLUME LIMITATION**

The undersigned counsel hereby certifies that this brief complies with the word-count limitation in D.S.D. Civ. LR 7(B)(1) because the brief does not exceed 12,000 words. This certification is made in reliance on the word count of the Microsoft Word software used to prepare the brief, which indicates that the word-count volume is 2,675 words, including any headings and footnotes in the body of the brief.

*/s/ Joshua E. Gardner*