UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN KILGALLON, DANIEL C. MOSTELLER and STEPHEN HOUGHTALING,<br><br>Defendants. | Case No. 1:21-cr-10023-BCB<br><br><br>**UNITED STATES OF AMERICA'S BRIEF IN OPPOSITION TO MOTION TO DISMISS** |

The United States of America, by and through Special Prosecutors Thomas G. Fritz and Cassidy M. Stalley, respectfully submit this brief in opposition to the Defendants' Motion to Dismiss.

## INTRODUCTION

The United States Marshals Service (USMS), by and through these named Defendants (collectively referred to as "the Defendants" or "the USMS"), makes clear that the USMS believes that the Executive Branch – not the Judiciary – is the sole and "final authority" on how a courtroom will function.  Relying entirely on a single sentence in 28 U.S.C. § 566(i), the USMS appears to assert that it has the exclusive power to disobey, delay, and disrupt court orders and proceedings under the guise of providing "judicial security."  The USMS boldly argues, therefore, that these Defendants did

nothing wrong, certainly nothing contemptuous, and the case should be dismissed as a matter of law.

Even if the USMS's misguided interpretation of its authority were correct – it is not – granting the Defendants' Motion would be procedural error. *United States v. Ferro*, 252 F.3d 964, 967 (8th Cir. 2001) (cleaned up and citation omitted). Indeed, the Defendants seek to challenge the sufficiency of the United States' evidence before trial. Defendants are effectively asking this Court to make factual determinations that fall within the province of the jury and to grant them summary judgment in their case. But making pretrial factual findings that go to the merits of the government's case is expressly prohibited by both the Eighth Circuit and the Federal Rules of Criminal Procedure. *United States v. Turner*, 842 F.3d 602, 604-05 (8th Cir. 2016). For this and all the reasons set forth below, Defendants' Motion must be denied.

## ARGUMENTS AND AUTHORITY

**I.      Rule 12 and the Eighth Circuit's Well-Established Precedent Prohibits This Court from Granting Defendants' Motion.**

Motions to dismiss are governed by Rule 12 of the Federal Rules of Criminal Procedure. In general, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). However, the Eighth Circuit has made clear that although Rule 12 "contemplates that district courts may sometimes make factual findings when ruling on pretrial motions, . . . [c]ourts may not, however, make factual findings when an issue is 'inevitably bound up with evidence about the alleged offense itself.'" *United States v.*

*Turner*, 842 F.3d 602, 605 (8th Cir. 2016) (quoting *United States v. Grimmett*, 150 F.3d 958, 962 (8th Cir. 1998)).  In other words, "when a defense raises a factual dispute that is inextricably intertwined with a defendant's potential culpability, a judge cannot resolve that dispute on a Rule 12(b) motion."  *United States v. Sampson*, 898 F.3d 270, 280–81 (2d Cir. 2018) (citation omitted).  "Doing so would 'invade the province of the ultimate finder of fact.'"  *Id.* at 281 (citing *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010)).

Moreover, unlike the Federal Rules of Civil Procedure, which authorize a grant of summary judgment, Rule 12(b) "does not provide for a pre-trial determination of sufficiency of evidence."  *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (cleaned up and citation omitted); *see also United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (per curiam) ("[T]here is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure.").  The Eighth Circuit has explained that because there is "no equivalent in criminal procedure to the motion for summary judgment that may be made in a civil case . . . the government has no duty to reveal all of its proof before trial."  *United States v. Nabors*, 45 F.3d 238, 240 (8th Cir. 1995); *see also United States v. Sampson*, 898 F.3d 270, 280 (2d Cir. 2018) (noting that there is no federal appellate case granting a district court the authority to require the government, before trial, to make a detailed presentation of the entirety of the evidence).  Indeed, the government is "entitled to marshal and present its evidence *at trial*."  *Ferro*, 252 F.3d at 968 (quoting *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (emphasis added).  The government need

3

not reveal its hand any sooner. *See United States v. Pope*, 613 F.3d 1255, 1259–1260 (10th Cir. 2010) ("[U]nlike their civil counterparts, criminal proceedings have no extensive discovery and summary judgment procedures requiring both sides to lay their evidentiary cards on the table before trial."). In fact, "[p]ermitting civil 'summary judgment'-like motions . . . would enable an end-run around the calibrated framework for discovery in criminal cases. To overcome such motions, the government might need to reveal its complete case before trial." *Sampson*, 898 F.3d at 280. Requiring the government to reveal its complete case before trial "would upset the policy choices reflected in the criminal discovery rules—and provide an advantage to the defense that the Rules' drafters did not intend." *Id.* at 280–81. Thus, a court's ruling on a pretrial motion to dismiss would be based on mere speculation as to what the evidence will be. The Eighth Circuit recognizes this reality and expressly disapproves of this practice. *See id.* ("We simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be." (quoting *DeLaurentis*, 230 F.3d at 661) (cleaned up)).

Therefore, a court can only resolve a pretrial motion under Rule 12(b) "'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity' of the motion." *Turner*, 842 F.3d at 604–05 (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). Under the Eighth Circuit's guiding precedent, "if disposing of the pretrial motion requires making factual determinations that fall within the province of the ultimate finder of fact" a district court must defer resolving those questions until trial. *Id.*

Undeniably, Defendants' Motion asks this Court to make factual determinations that are completely outside the bounds of Rule 12(b) and exclusively within the province of the ultimate finder of fact. Indeed, in the first instance, Defendants ask the Court to make a pretrial factual determination as to the defendants' intent or state of mind when the Defendants directed the deputy marshal to remove the prisoners from the federal courthouse without the permission of the district court. (*See* Filing 46 at pg. 34–42). Defendants are charged with criminal contempt under 18 U.S.C. §§ 401(1) and 401(3). To convict the Defendants under both §§ 401(1) and 401(3), the United States must establish beyond a reasonable doubt that Defendants acted with criminal intent. *See U.S. ex rel. Shell Oil Co. v. Barco Corp.*, 430 F.2d 998, 1001 n.5 (8th Cir. 1970) (stating that criminal intent is an essential element of criminal contempt). A defendant acts with criminal intent when he acts willfully. *See Wright v. Nichols*, 80 F.3d 1248, 1251 (8th Cir. 1996) (affirming conviction for criminal contempt because the evidence showed that the defendant acted willfully); *United States v. Dowdy*, 960 F.2d 78, 81 (8th Cir. 1992) (same). Willfulness means "a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order." *In re Medlock*, 406 F.3d 1066, 1071–72 (8th Cir. 2005).

Whether Defendants acted willfully is a question that falls squarely "within the province of the ultimate finder of fact." *Id.* To be sure, the Supreme Court has expressly held that "where intent of the accused is an ingredient of the crime charged, its existence is a question of fact" that a judge cannot resolve on the jury's behalf. *Morissette v. United States*, 342 U.S. 246, 274, 72 S. Ct. 240, 96 L. Ed. 288 (1952). The Court further

explained, "[h]owever clear the proof may be, or however inconstrovertible [sic] may seem to the judge to be the inference of a criminal intention, the question of intent can never be ruled as a question of law, but must always be submitted to the jury." *Id.* (citations omitted) (emphasis added). Only after the question of intent has been submitted to the ultimate finder of fact may defendants challenge the sufficiency of the evidence as to that element. *See United States v. Sholley-Gonzalez*, 996 F.3d 887, 893 (8th Cir. 2021) ("[C]hallenges to the evidence's sufficiency are tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29, not by a dismissal of an indictment on the basis of predictions as to what the trial evidence will be." (cleaned up and citation omitted)).

The Defendants also ask the Court to make a pretrial factual determination as to whether the Defendants' misbehavior occurred in or near the court's presence. *See* Filing 46 at 33-34. This request is similarly premature and prohibited by Rule 12(b). To convict the Defendants under 18 U.S.C. § 401(1), the United States must prove that Defendants engaged in misbehavior in the court's presence "or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1). A court's presence extends to "every part of the place set apart for its own use, and for the use of its officers, jurors, and witnesses." *United States v. Rangolan*, 464 F.3d 321, 325 (2d Cir. 2006) (quoting *Ex Parte Savin*, 131 U.S. 267, 277 (1889)). For example, a court's presence includes courtrooms, jury rooms, witness rooms, and hallways immediately adjacent to these rooms. *Id.* Misbehavior takes place "near" the court's presence if such misbehavior occurs within "physical proximity" to the court. *Id.* (quoting *Nye v. United States*, 313

6

U.S. 33, 48 (1941).  The phrase "so near thereto" is to be construed as a "spatial limitation."  *Rangolan*, 464 F.3d at 326 (citing *Nye*, 313 U.S. at 48–49).  Thus, contempt under § 401 is limited to "those acts of misbehavior that did not simply obstruct justice but that occurred in the physical presence of the court or close enough as to be disruptive to quiet and order or to actually interrupt the court in the conduct of its business."  *Id.* (quoting *Nye*, 313 U.S. at 52).

Whether Defendants' misbehavior occurred in or near the court's presence is an essential element of the crime that is "inevitably bound up with evidence about the alleged offense itself."  *Turner*, 842 F.3d at 604–05 (citation cleaned up).  The Supreme Court has made clear that it is the jury's responsibility, as the ultimate finder of fact. to determine, beyond a reasonable doubt, a defendant's guilt on "every element of the crime with which [the defendant] is charged."  *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995).  In doing so, the jury must determine the facts, apply the law to those facts, and draw the ultimate conclusions of guilt or innocence.  *Id.* at 514.

Here, the ultimate finder of fact must consider the facts surrounding the Defendants' orders to the deputy marshal to remove the criminal defendants from the federal courthouse in Aberdeen.  It will be the fact finder's responsibility to then determine whether the deputy marshal's removal of criminal defendants from the courthouse—an act she undertook based on Defendants' orders—"occurred in the presence of the court or close enough as to . . . actually interrupt the court in the conduct of its business."  *Rangolan*, 464 F.3d at 326.  Because it is the jury's job, as the ultimate finder of fact, to decide the Defendants' guilt on every element of the crime, this Court

must defer ruling on Defendants' Motion to Dismiss. *See Turner*, 842 F.3d at 605 (cleaned up and citation omitted)). In sum, this Court cannot determine the sufficiency of the evidence before trial under Rule 12(b) as that determination rests exclusively with the ultimate finder of fact.

The Defendants, however, completely ignore this well-established rule in their brief. Instead, they contend that this Court retains the inherent power and authority to dismiss criminal contempt proceedings without the necessity of trial. (*See* Filing 46 at 24-28). In other words, Defendants suggest that criminal contempt proceedings are excepted from the general rule. But in support of this contention, Defendants cite to only two cases—neither of which are of any help to Defendants.[1]

For example, the first case that Defendants cite to is *United States v. Kelsey-Hayes Co.*, 476 F.2d 265 (6th Cir. 1973). In that case, a district court judge levied criminal contempt charges against the defendants for violating certain provisions of the court's consent decree in anti-trust case. *Id.* at 265–66. The defendants filed a pretrial motion to dismiss, effectively challenging the sufficiency of the government's evidence. *Id.* at 266. Another district court judge, having taken the case over from the original district court judge, granted the motion to dismiss, concluding that as a matter of law the defendants did not commit criminal contempt. *Id.* The government appealed the dismissal. *Id.* Notably, the only issue on appeal was whether the dismissal was an appealable order.

---

[1] Defendants also cite to the Wright and Miller treatise, which states that a "judge may dismiss contempt proceedings sue sponte before trial." 3A Fed. Prac. & Proc. Crim. § 709 (4th ed. April 2021 updated). However, the only case that the treatise authors cite in support of that statement is one of the cases that Defendants have cited, *United States v. Barnett*, 346 F.2d 99 (5th Cir. 1965). *Id.* at § 709 n.28.

8

*Id.* at 266–27.  The Sixth Circuit concluded that it was not.  *Id.* at 267.  The Sixth Circuit never considered whether the district court judge had the authority to summarily dismiss the criminal contempt charges before trial based on the argument of insufficient evidence. Thus, *Kelsey-Hayes Co.* does not support Defendants' proposition that a district court judge can—in contravention of well-established guiding precedent—make factual determinations that belong to the jury and dismiss criminal contempt charges before trial.

Likewise, the Defendants' other case, *United States v. Barnett*, 346 F.2d 99 (5th Cir. 1965), does not support their proposition.  In *Barnett*, the Fifth Circuit ruled that James Meredith, an African-American student, must be permitted to attend the University of Mississippi, an all-white university.  The governor and lieutenant governor of Mississippi refused to follow the court's decree, ordering law enforcement from around the state to form a wall to physically prevent Meredith from entering the University of Mississippi.  *Id.* at 104 (Wisdom, J., dissenting).

In 1962, the Fifth Circuit held both the governor and lieutenant governor in civil and criminal contempt.  *Id.* at 100.  Three years later, in a four to three decision, the Fifth Circuit determined that it was in the public's best interest to dismiss the criminal contempt charges against the defendants.  *Id.*  The Fifth Circuit noted that criminal contempt is "a sui generis proceeding for the protection of the integrity of the Court."  *Id.* Therefore, those proceedings are "within the control of the Court and the Court has the power and authority to order them dismissed."  *Id.*  Notably, the Fifth Circuit reasoned that the criminal proceedings should be dismissed because "considerations of respect for the Court do not require further prosecution" given the defendants' substantial

compliance with court orders. *Id.* Moreover, the Fifth Court found further proceedings were not necessary to deter others. *Id.*

Contrary to Defendants' representation of the law, *Barnett* at best provides this Court with non-binding, persuasive authority to dismiss criminal contempt proceedings before trial if "considerations of respect for the Court do not require further prosecution" due to substantial compliance with court orders and in the interest of the public. As detailed below, such is not the case here. And there are reasons to doubt whether a court actually possesses this authority. Indeed, the *Barnett* court itself does not cite any authority to support its determination that it had the power to dismiss the case before trial. *See id*. at 106 (Wisdom, J., dissenting) (explaining that the only two cases that the court cited were cases in which the defendant was tried and found guilty of contempt). It is clear that the *Barnett* court sought to avoid a stand-off between the former governor of Mississippi and the federal government; the Fifth Circuit's analysis is largely motivated by political considerations rather than legal considerations. Moreover, Defendants do not cite to any cases in which another circuit, including the Eighth Circuit, has held the same, and the United States has been unable to find any such cases. Given the unique facts of *Barnett* and that no other court has followed its holding, the case also does little to support Defendants' contention that this Court has the power to dismiss this case before trial by making factual determinations that go to the very heart of the government's case in contravention of Rule 12(b) and related case law.

In sum, Defendants have failed to show that criminal contempt proceedings are exempt from the well-established rule that a court cannot consider a pretrial motion to

10

dismiss "when a defense raises a factual dispute that is inextricably intertwined with a defendant's potential culpability." *United States v. Sampson*, 898 F.3d 270, 280-81 (2d Cir. 2018) (citation omitted); *see also United States v. Turner*, 842 F.3d 602, 604-05 (8th Cir. 2016). Whether Defendants possessed the requisite intent or whether their misbehavior occurred in or near the court's presence, are questions of fact for the jury or ultimate fact-finder. *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995); *Morissette v. United States*, 342 U.S. 246, 274, 72 S. Ct. 240, 96 L. Ed. 288 (1952). It would be procedural error for this Court to consider the sufficiency of the United States' evidence before trial and make a factual determination on the issues of intent and proximity that are inevitably bound up with evidence about the alleged offense itself. *Turner*, 842 F.3d at 604–05; *See also Ferro*, 252 F.3d at 967. The United States respectfully requests that Defendants' Motion be denied.

## II.     The Interests of Justice and Public Interest Require That This Case Proceed.

The Defendants argue that "the public interest, including the interest of Judicial and Executive Branches of the United States government, calls for a dismissal." *See* Filing 46 at 28. Defendants plead that they were "in a no-win situation . . . forced to choose between conflicting direction from Executive and Judicial Branches," and they had "no choice but to follow orders from USMS Headquarters," which in turn was acting under its statutory authority. *Id.* at 30. But in making this argument, Defendants ignore salient facts, fail to take responsibility for their own actions, and inflate their statutory authority; they in essence argue they are "beyond the reach of the law." *Young v. U.S. ex*

11

*rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796, n. 8, 107 S. Ct. 2124, 2132, 95 L. Ed. 2d 740 (1987) (citation omitted).

As this Court is well-aware, courts are clothed with the power of contempt. In fact, "the power to punish for contempt is inherent in all courts." *Id.* at 795 (citation omitted). "The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." *Id.* at 796. It "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450, 31 S. Ct. 492, 501, 55 L. Ed. 797 (1911). Indeed, the Supreme Court has cautioned that "if a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Id.* "The need to vindicate a court's authority is thus satisfied by ensuring that an alleged contemner will have to account for his or her behavior in a legal proceeding, regardless of whether the party is ultimately convicted or acquitted." *Young*, 481 U.S. 787 at 796, n. 8, 107 S. Ct. at 2132.

Here, by at least May 4, 2021, Defendants were well-aware that the district court was not going to permit any unvaccinated individual, specifically including USMS, to be present in the courtroom or chambers. *See* Ex. A hereto. In fact, Defendants were specifically told by the Honorable Roberto Lange on May 4, 2021, that the court "likely

12

will debar from chambers and courtrooms all its employees who refuse to be vaccinated" and "want to avoid having unvaccinated Deputy US Marshals in the courtrooms." Ex. B. If there was any question, Judge Kornmann then made explicitly clear to Defendant Mosteller that Judge Kornmann was restricting all unvaccinated individuals, including "Marshal personnel" from the courtroom:

> Mosteller to Hon. Kornmann, May 4, 2021 at 11:18 am: I was advised by the Aberdeen CSO staff that during a recent phone conversation you stated that no unvaccinated CSO or attorney will be allowed into your courtroom. In an effort to be best prepared for your return to the Aberdeen courtroom, do you anticipate such a restriction applying to USMS personnel, USMS part-time contract personnel and defendants? I want to ensure that I am working from the same sheet of music as you and can be prepared to provide the best possible service for the Court, given the parameters within which I must work.
>
> Hon. Kornmann to Mosteller, May 4, 2021 at 11:49 am: It does not apply to defs. *Applies to* GA attorneys, AUSA's, *Marshal personnel*, probation officers, and to anyone else except persons who request an exception with good reasons to do so.

Ex. A (emphasis added). Defendant Mosteller acknowledged the same, thanking Judge Kornmann for his "timely response and clarification." *Id.* Yet knowing all of this, the Defendants feigned shock when Judge Kornmann ordered Deputy USMS Kinney to leave the courtroom.

What happened next was a flagrant display of disrespect and disobedience to the district court. Indeed, instead of first contacting the district court to discuss how best to proceed forward in this situation, or even ask the AUSA, who was present at the courthouse, for a continuance, the Defendants, at the direction of "USMS Headquarters," unilaterally directed the removal and transport of prisoners from the courthouse to the

13

nearest appropriate jail facility. (Each of these prisoners was ordered to appear pursuant to valid court order for sentencing.) In fact, for over two hours, no one from the USMS even attempted to contact the district court to discuss the situation or the USMS's perceived "conflicting direction from Executive and Judicial Branches." *See* Filing 46 at 30; *see also* Ex. C. When the prisoners were nowhere to be found, the AUSA was so "flummoxed" and concerned that he requested the "ability to inspect [the USMS office] and make sure no one was hurt or something." Ex. D hereto. When the USMS finally informed the district court what it had done, it offered no solution and advised that it likely would not be able to produce prisoners for hearings the next day. *Id.* at 9.

The USMS claims these Defendants had statutory authority to unilaterally direct the removal of the prisoners without permission of the district court, all in the name of "judicial security." This asserted position should give this Court some pause.

The United States recognizes that 28 U.S.C. § 566(i) provides, in part, that "the United States Marshals Service retains final authority regarding security requirements for the judicial branch of the Federal Government." However, it is clear from reading the entirety of Section 566(i) that Congress did not intend for the USMS to cause the well-oiled gears of the judicial system come to a screeching halt whenever the USMS determines there is a security issue. To be sure, the first part of Section 566(i) states the "Director of the United States Marshals Service *shall consult with the Judicial Conference* of the United States *on a continuing basis* regarding the security requirements for the judicial branch." (Emphasis added). This is in keeping with the fact that the USMS was created by the first Congress and "given extensive authority to

*support* the federal courts within their judicial districts and to carry out all lawful orders issued by judges, Congress, or the president." *See* https://www.usmarshals.gov/history/broad_range.htm (last visited July 26, 2021) (emphasis added). Its motto is "Justice. Integrity. Service." *Id.* And for over 200 years, the USMS has contributed to the judiciary's efficient operations and ensured that the courts function smoothly.

Yet the USMS is arguing here that the USMS can determine – at any time and for any reason – that "security requirements" require removing prisoners and preventing them from appearing at a court ordered sentencing hearing without even consulting with the court. Instead of supporting the court, carrying out its lawful orders, and making its process effective, the USMS appears to believe it can subvert the authority of the court, creating, instead of removing, obstructions to the exercise of justice. But if allowed to remove prisoners without the court's permission – let alone, knowledge – can the USMS then close the courthouse, prevent a jury trial, or refuse to transport prisoners, all in the name of security? Surely not. Still, this is what Defendants are asking this Court to sanction and approve by dismissing the criminal contempt charges against them.

The USMS and the judiciary must work in concert as they have done for over 200 years. For whatever reason, the USMS refused to do so here, opposing, not upholding, compliance with the district court's orders. And their refusal resulted in disruption, delay, and disobedience of court orders. The interests of justice and public interest require that these Defendants, and the entire USMS as a whole, be made to answer and account for their own acts of disobedience in vindication of the court's authority. *Young,*

15

481 U.S. 787 at 796, n. 8, 107 S. Ct. at 2132. "To be held accountable is not to forecast the outcome." *United States v. Barnett*, 346 F.2d 99, 103–04 (5th Cir. 1965) (Brown, dissenting). Instead, "to be held accountable is merely to require that through an orderly, fair trial, it be determined whether the conduct of this high officer was or was not legally justifiable, was or was not a willful disobedience to a lawful order of this Court." *Id.* To dismiss this case outright, without hearing all of the evidence, would allow the USMS to "make [it]self a judge of the validity of the orders," "by [its] own act of disobedience set them aside" on the basis of statutory authority, and make a mockery of the judicial power of the courts. *Gompers*, 221 U.S. at 450, 31 S. Ct. at 501.

### III.     Position on Jury Trial

As directed by this Court's Order, Filing 39, the United States offers the following on the issue of whether a jury trial is required by law.

The United States recognizes that this Court, in its findings regarding the nature of the proceedings in Section 11.A of its Order following the status conference in this case, found that "the charges at issue constitute Class B-or-lower misdemeanors or infractions" for purposes of determining whether the Speedy Trial Act applied. *Id.* at 5. The United States further acknowledges that generally, "[p]etty contempt like other petty criminal offenses may be tried without a jury." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 837 n.5 (1994).

However, petty contempts are "such as where a witness refuses to testify, or a party disrupts the court." *Id.* at 832. Petty contempts "traditionally have been subject to summary adjudication, to maintain order in the courtroom and the integrity of the trial

16

process in the face of an actual obstruction of justice." *Bagwell*, 512 U.S. at 832, 114 S. Ct. at 2560 (cleaned up and citations omitted).

On the other hand, "once a court leaves the realm of immediately sanctioned" petty contempts, the Supreme Court has instructed that certain due process rights, such as a jury trial, may be required. *Id.* For example, the Supreme Court has explained "[i]f a court delays punishing a direct contempt until the completion of trial, for example, due process requires that the contemnor's rights to notice and a hearing be respected." *Id.* Similarly, if the court contemplates punishing the accused with "serious criminal penalties," then the accused is entitled to "the full protections of a criminal jury trial." *Id.* at 833; *see also Bloom*, 391 U.S. at 208, 88 S. Ct. at 1485–86 ("when serious punishment for contempt is contemplated, rejecting a demand for jury trial cannot be squared with the Constitution or justified by considerations of efficiency or the desirability of vindicating the authority of the court."). Moreover, "criminal procedural protections such as the rights to counsel and proof beyond a reasonable doubt are both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power," where elaborate and reliable factfinding are required. *Id.* at 833-34.

Here, the Defendants are charged with two counts of criminal contempt. The Supreme Court has stated that "[c]riminal contempt sanctions are entitled to full criminal process." *Id.* (citation omitted). The district court did not summarily adjudicate these Defendants. Instead, it elected to impose penalties after notice and the completion of a trial. This suggests that Defendants are entitled to certain due process protections including the right to a jury trial. Indeed, they have demanded a jury trial. Furthermore,

17

their conduct may warrant serious criminal sanctions to deter others from engaging in the same behavior.  That said, caution favors having a jury trial.

## CONCLUSION

For all of the reasons outlined above, the United States respectfully requests that this Court deny the Defendants' Motion.

Dated September 17, 2021.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

By: */s/ Cassidy M. Stalley*
    Thomas G. Fritz
    Cassidy M. Stalley
    Special Prosecutor for the United States of America
    909 St. Joseph Street, Suite 800
    Rapid City, SD  57701-3301
    605-342-2592
    cstalley@lynnjackson.com

CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2021, I sent to:

Mr. Ronald A. Parsons, Jr.
Johnson, Janklow, Abdallah & Reiter, LLP
PO Box 2348
Sioux Falls, SD 57101-2348
ron@janklowabdallah.com

Mr. Scott A. Abdallah
Johnson, Janklow, Abdallah & Reiter LLP
PO Box 2348
Sioux Falls, SD 57101-2348
scott@janklowabdallah.com

Mr. Joshua E. Gardner
U.S. Department of Justice
Federal Programs Branch
1100 L. Street NW, Room 11502
Washington, DC 20530
joshua.e.gardner@usdoj.gov

Mr. Marty J. Jackley
Gunderson, Palmer, Nelson & Ashmore, LLP
111 W. Capitol Avenue, Suite 230
Pierre, SD 57501
mjackley@gpna.com

by Notice of Electronic Filing generated by the CM/ECF system, a true and correct copy of **United States of America's Brief in Opposition to Motion to Dismiss** relative to the above-entitled matter.

*/s/ Cassidy M. Stalley*
Cassidy M. Stalley