IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN KILGALLON, DANIEL C. MOSTELLER, AND STEPHEN HOUGHTALING,<br><br>Defendants. | 1:21-CR-10023<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the prosecution's Motion for Issuance of Subpoenas Duces Tecum Pursuant to Federal Rule of Criminal Procedure 17(c). Filing 57. For the reasons stated below, the prosecution's motion is denied.

## I. BACKGROUND

This is a criminal prosecution of three defendants: John Kilgallon, Chief of Staff of the United States Marshals Service ("USMS"); Daniel Mosteller, United States Marshal for the District of South Dakota; and Stephen Houghtaling, Chief Deputy United States Marshal for the District of South Dakota. Filing 21. Judge Kornmann charged each of them with criminal contempt of court under 18 U.S.C. § 401 (1) and (3), alleging they acted contemptuously on or about May 10, 2021,

> in concert and conspiracy . . . by ordering or allowing a deputy U.S. marshal, one of their subordinates, to remove three criminal defendants [scheduled for hearings before Judge Kornmann that day] . . . from [the] courthouse, without first notifying or asking permission from this Court and in violation of each defendant's scheduling order, causing said criminal defendants' hearings to be delayed, and thereby obstructing the administration of justice in those defendants' cases.

Filing 21 at 1.

1

The contempt charges arose after an incident in Judge Kornmann's courtroom on May 10, 2021. At a hearing on this day, Judge Kornmann barred Deputy Marshal Kinney from his courtroom because she refused to disclose her COVID-19 vaccination status. Filing 11-3 at 4-6. Judge Kornmann further instructed that no unvaccinated personnel would be allowed in his courtroom. Filing 11-3 at 4-6. Deputy Marshal Kinney explained to Judge Kornmann that she was not permitted to leave the defendant, who was in her custody, in the courtroom without a Deputy Marshal present. Filing 11-3 at 4-6. Given there was a Court Security Officer also in the courtroom with Deputy Marshal Kinney and the defendant, the Court felt the defendant was secure, and ordered Deputy Marshal Kinney to leave the defendant and the courtroom given her refusal to disclose her vaccination status. Filing 11-3 at 4-6. Judge Kornmann further noted that the Deputy Marshal could be placed in custody herself if she did not comply. Filing 11-3 at 4-6. After this incident, the U.S. Marshals on duty removed the other prisoners scheduled for hearings that day and the next. Filing 1-4 at 5-6. The hearings were later rescheduled via Zoom with the defendants participating in the hearings via video conference from different rooms in the Aberdeen, South Dakota courthouse. *See* Filing 1-4 at 13-16.

The documentation and correspondence make it clear that there was a conflict between how Judge Kornmann and the USMS sought to deal with the pandemic and personnel vaccination. *See, e.g.*, Filing 1-2; Filing 1-4; Filing 1-5; Filing 1-6. It is undisputed that USMS personnel, including the three defendants in the present case, and the U.S. District Court for the District of South Dakota communicated in the weeks leading up to and on the day of the alleged contempt concerning the COVID-19-related policies of the respective organizations. *See, e.g.*, Filing 1-2; Filing 1-3; Filing 1-5; Filing 1-6. Among the communications issued by the U.S. District Court for the District of South Dakota, Judge Kornmann issued a memorandum to court personnel on

March 25, 2021, instructing them that he was inquiring into their vaccination status and vaccination passports would "soon be required for a person to have access to the courthouse . . . ." Filing 1-1. On April 15, 2021, Marshal Mosteller informed Judge Kornmann that, per USMS policy, USMS employees would not be providing their vaccination status to the court. Filing 1-2. On the day of the alleged contempt, Chief Deputy Houghtaling communicated to Judge Kornmann that "[t]he Marshals Service made the decision" to remove the prisoners who were scheduled for hearings on May 10. Filing 1-4 at 6.

The prosecution now seeks to subpoena from Verizon the government-issued phone records of the three defendants in this case, "seeking to obtain relevant and admissible evidence for use in support of its case." Filing 57 at 5. The prosecution previously attempted to subpoena "[a] list or report of all incoming and outgoing calls, call detail, text messages, picture detail, and internet sessions for [Marshal Mosteller's and Chief Deputy Houghtaling's government issued phone numbers], from March 1, 2021 to May 12, 2021, including the times of usage initiated and duration of use." Filing 52-1. Defendants moved to quash that subpoena as procedurally deficient under Rule 17 of the Federal Rules of Criminal Procedure and lacking in substantive justification. Filing 52. The prosecution withdrew the subpoenas at issue in Defendants' motion to quash, Filing 56, and filed the present motion for subpoenas, Filing 57. In the meantime, Verizon responded to the withdrawn subpoena, and documents responsive to the withdrawn subpoena are now in the custody and control of the Clerk of Court's office in Sioux Falls, South Dakota.

The prosecution has filed the present motion, in which it moves the Court to issue a subpoena duces tecum directing Verizon to produce:

> A list or report of incoming and outgoing calls, call detail, text messages, picture detail, and internet sessions for cellular telephone numbers issued to defendants, from March 25, 2021 to May 11, 2021, including the times of usage initiated and duration of use, specifically related to conversations among and between the

3

> Defendants, deputy marshal Kinney, the District Court of South Dakota and its personnel, and/or USMS Headquarters regarding COVID policies and vaccination and USMS policies.

Filing 57 at 2. The defendants oppose the prosecution's motion, arguing the subpoenas sought represent an attempt to improperly use Federal Rule of Criminal Procedure 17 as a means of discovery. Filing 61.

## II. DISCUSSION

"The Supreme Court has made clear that subpoenas duces tecum are not meant to serve as tools of discovery in criminal cases, but are instead means by which to expedite the trial by providing a time and place prior to trial for the inspection of subpoenaed materials." *United States v. Bueno*, 443 F.3d 1017, 1026 (8th Cir. 2006) (citing *United States v. Nixon*, 418 U.S. 683, 698–99 (1974)). The party requesting the subpoena duces tecum bears the burden of "identify[ing] the documents [sought] with adequate specificity and show[ing] that the documents are relevant and admissible." *United States v. Bradford*, 806 F.3d 1151, 1155 (8th Cir. 2015) (citing *United States v. Stevenson*, 727 F.3d 826, 831 (8th Cir. 2013)). "The relevance and specificity elements require more than the title of a document and conjecture as to its contents, and a subpoena should not issue based upon a party's mere hope that it will turn up favorable evidence." *Id.* (quoting *Stevenson*, 727 F.3d at 831) (internal quotation marks omitted).

The prosecution seeks phone data from cellular telephones issued to Defendants by the USMS from March 25, 2021, to May 11, 2021. Filing 57 at 2, 9. The prosecution's motion specifies that it wants phone data "specifically related to conversations among and between the defendants, deputy marshal Kinney, the District Court of South Dakota and its personnel, and/or USMS Headquarters regarding COVID policies and vaccination and USMS policies." *See* Filing 57.

The prosecution argues it seeks material relevant to its case in large part because the data produced may offer evidence of Defendants' criminal intent. Filing 57 at 5-7. However, there is nothing in the record or in the prosecution's motion to indicate that the conversations sought would reveal criminal intent. The prosecution has not demonstrated a good-faith basis to believe that the phone records sought would demonstrate Defendants' alleged criminal intent. Additionally, seeking all conversations "regarding COVID policies and vaccination and USMS policies" over more than a month is a broad request. A mere assertion, even if true, that inevitably some conversations relevant to the case would be captured in the data sought is insufficient to justify such a subpoena. Absent more specificity in its motion as to what the prosecution expects to find and in which conversations, the Court cannot be convinced this is not a fishing expedition, an improper attempt at discovery in a criminal case, or a request based upon the Government's "mere hope that it will turn up favorable evidence." *Bradford*, 806 F.3d at 1155 (quoting *Stevenson*, 727 F.3d at 831).[1]

It is also of note that the records being sought are government phone records from senior executive branch personnel and law enforcement officers tasked with, among other things, providing for the security of the federal judiciary. Considering Defendants' leadership roles in the USMS, the broad scope of the data sought, and the difficulty Verizon would have in deciding which documents are responsive to the subpoena request, Verizon's response would be virtually certain to result in the implication of claims of privilege if the subpoenas were to issue. Thus, the Court would be forced to wade even deeper into what all interested parties seem to concede is, at its heart, a dispute between branches of the federal government. *See, e.g.*, Filing 1 at 6 (Judge

---

[1] The Court notes that electronic records many times are secured by the Government in a criminal case. However, case law makes clear that such documents rarely are secured in a criminal case pursuant to a Federal Rule of Criminal Procedure 17(c) subpoena in the manner requested by the Government here.

Kornmann's order stating "the question is whether the executive branch may adopt and maintain policies and procedures that severely interfere with the ability of the federal judiciary to run the courtrooms and chambers"); Filing 46 at 2-8 (Defendants describing the structure of the federal government and the USMS's position as an arm of the executive branch in their Motion to Dismiss); Filing 49 at 1-2 (the prosecution describing what "[t]he *United States Marshals Service*," "makes clear," "appears to assert," and "boldly argues," in response to Defendants' Motion to Dismiss (emphasis added)). "While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Nixon*, 418 U.S. at 707 (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring)). Thus, restraint is especially warranted here, where the specific nature of information being sought is not clearly set forth.

The Court also addresses the response from Verizon that includes the telephone records originally requested by the prosecution pursuant to its withdrawn and admittedly procedurally deficient subpoena. Given the subpoena that Verizon responded to was withdrawn, such documents should be returned to Verizon. The Clerk of the District Court for the District of South Dakota is directed to return the documents to Verizon with the message that the documents are being returned because the subpoena that Verizon responded to was withdrawn. If the Clerk of the District Court determines that returning the documents to Verizon is not feasible, the Court may destroy the documents received from Verizon.

### III. CONCLUSION

Accordingly,

IT IS ORDERED:

1. The prosecution's Motion for Issuance of Subpoenas Duces Tecum Pursuant to Federal Rule of Criminal Procedure 17(c), Filing 57, is denied; and

2. The Clerk of the Court is directed to return to Verizon or destroy the discs it received in response to the prosecution's initial request in accordance with the directives in this Order.

Dated this 12th day of October, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge